# **EXHIBIT 4**

June 29, 2018
Legacy Seeds, Inc.
290 Depot St.
Scandinavia, WI 54977
Attn: Bruce Ceranske

    Re:    Non-Binding Letter of Intent

Dear Bruce:

    We are pleased to provide this non-binding letter of intent ("Letter") to set forth the terms and conditions under which Tillerman Seeds, LLC, through one or more wholly owned subsidiaries ( "Purchaser") would propose to acquire the assets used in the operation of the business (the "Business") of Legacy Seeds, Inc. ("Seller"). The Seller is beneficially owned by Bruce J. Ceranske, Tyler E. Lee and Steven D. Jensen ("Owners").

    The principal terms of our proposal are as follows:

    1.    <u>Transaction Structure</u>. The proposed transaction would be structured as an asset sale and purchase in which Purchaser would purchase and acquire (a) all of Seller's assets other than cash, cash equivalents and other mutually agreed excluded assets (which would include, without limitation, mutually agreed doubtful accounts receivable), (b) designated assets of Owners or affiliates that are primarily used in the Business, and (c) the real property and improvements located at 290 and 291 Depot Street, Scandinavia, WI and the newly constructed research facility both owned by Legacy Property, LLC (the "Real Property"). It is our understanding that the Real Property is owned by a related party (the "Real Property Seller") and currently leased to the Seller. The real estate purchase will be a separate transaction consummated concurrently with the purchase of the assets of the Seller. The assets to be purchased by Purchaser from Seller and the Real Property to be purchased from the Real Property Seller in the proposed transactions are collectively referred to herein as the "Purchased Assets."

    2.    <u>Purchase Price; Payment</u>. Based upon the information provided to us to date, and subject to the adjustment provided in paragraph 5 below, in consideration of the transfer to Purchaser of the Purchased Assets, Purchaser would pay a purchase price of $15,500,000.00 (the "Enterprise Value") assuming the transaction is on a cash-free, debt-free basis. In addition, Purchaser (or an affiliate) will acquire the Real Property from the Real Property Seller for a purchase price of $500,000 (the "Real Property Value") plus $400,000 for the newly constructed research facility (the "Research Facility"). At closing, the parties will execute a definitive purchase agreement incorporating the terms and conditions in this Letter, and Purchaser will (a) deposit One Million Five Hundred Thousand Dollars ($1,500,000) into an escrow account to be held for twelve (12) months to support the representations and warranties in the purchase agreement; (b) pay the remainder of the Enterprise Value to Seller by wire transfer of immediately available funds (the "Closing Cash Payment"); and (c) pay $500,000 of the Real Property Value to Real Property Seller by available funds and the documented project costs related to the Research Facility in an amount not to exceed $600,000 by a five (5) year land contract for the Research Facility. As additional consideration for the Purchased Assets, Purchaser would agree to assume and discharge, when due, obligations under contracts included among the Purchased Assets and obligations associated with Seller's deferred revenue (i.e., customer prepaid s) to the extent reflected on a closing date balance sheet (collectively, the "Assumed Liabilities" and together with the Enterprise Value and the Real Property Value, the "Purchase Price"). At Buyer's request, Seller will agree to defer up to $1,000,000 of the Purchase Price for one year at 6% per annum subordinated to Buyer's Lenders.

Legacy Seeds, Inc.
June 29, 2018
Page 2

    3.    <u>Personal Goodwill</u>. At Closing, Purchaser will pay Two Million Dollars ($2,000,000) in cash by wire transfer or immediately available funds directly to Mr. Bruce Ceranske to acquire his personal goodwill related to the Business.

    4.    <u>Financing</u>. The Purchase Price would be funded using a combination of debt and equity. The management of Seller on a going forward basis will be afforded an opportunity to "co-invest" with the investors of Purchaser.

    5.    <u>Adjustments to Purchase Price</u>. At Closing, Seller will agree to deliver to Purchaser a mutually agreed upon amount of Net Working Capital (as defined below). "Net Working Capital" is determined in accordance with Exhibit A to this letter. The adjustments to the Closing Cash Payment described herein and the closing date balance sheet would be subject to a customary post-closing true up mutually agreed by the parties.

    6.    <u>Tax Allocation</u>. The Purchase Price would be allocated among the Purchased Assets of Seller as follows: (a) first, to each Purchased Asset of Seller in an amount equal to Seller's tax basis of such Purchased Asset, and then (b) second, to the tangible personal property of Seller included among the Purchased Assets, equal to the Market Value of such asset (determined after the allocation described in clause (a)) to be allocated in proportion to the tax basis of such tangible personal property of Seller included among the Purchased Assets, and then (c) third, the remainder to Seller's goodwill and going concern value.

    7.    <u>Timetable; Business Review; Interim Business Operations</u>. Upon acceptance of this Letter, Purchaser will move expeditiously toward closing the transaction with the Asset Purchase Agreement to be signed by July 13, 2018 and it is anticipated that funding will occur as soon as possible thereafter. We would anticipate the closing will occur on or before August 1, 2018 (with an anticipated "cutoff" date of June 30, 2018). Until the closing or the termination or expiration of the exclusivity provided herein, the Business would be operated in the ordinary course of business.

    8.    <u>Conditions</u>. The transactions contemplated by this Letter would be subject to the following conditions:

        (a)    Satisfactory completion of Purchaser's due diligence review;

        (b)    the absence of any material adverse change in the Business;

        (c)    the execution of a mutually acceptable definitive purchase agreement containing the substance of the matters set forth in this Letter, including those set forth in paragraph 9 below;

        (d)    receipt of mutually designated third-party consents (if any);

        (e)    execution by Bruce Ceranske of an employment agreement of two years in length to be the President of the Legacy Seeds product line at an annual base salary of $200,000, plus a bonus plan based on the operating performance of the Legacy Seeds product line. Mr. Ceranske's employment would provide for a position on Purchaser's board of directors, and depending on the level of co-investment, a board position with Parent.

    9.    <u>Purchase Agreement</u>. The definitive purchase agreement for the purchase of the assets of the Seller would include:

Legacy Seeds, Inc.
June 29, 2018
Page 3

      (a)    Customary representations and warranties made by Seller regarding the Business and the Purchased Assets being sold by Seller; provided, that (i) Seller would not be required to represent or otherwise be responsible for actual collection of accounts receivable or actual use of inventory following closing and (ii) the representations and warranties in the definitive purchase agreement would constitute all of the representations and warranties made by the parties in connection with the transaction, and the parties would agree to not rely on any representations, warranties or other information not contained therein ;

      (b)    Seller's representation and warranties in the definitive purchase agreement would survive for 12 months following closing, except that (i) representations and warranties regarding capitalization and organization of Seller, title to Purchased Assets, authority to execute and brokers' fees would survive indefinitely; (ii) representations and warranties regarding taxes and environmental would survive for the applicable statute of limitations, except that any Recognized Environmental Conditions that are identified during due diligence shall be subject to a mutually agreed upon allocation of liability;

      (c)    A 5-year non-compete providing that neither Seller nor Owners would compete with the Business anywhere in the states of: Wisconsin, Minnesota, Iowa, Illinois, Indiana, Michigan, Ohio and Idaho;

      (d)    An indemnification provision for Seller and Owners to, severally indemnify, defend and hold harmless Purchaser from and against all Adverse Consequences (as defined below) to the extent caused by (i) breaches of Seller's representations, warranties, covenants and agreements contained in the definitive purchase agreement and (ii) liabilities of Seller to extent such liabilities are not Assumed Liabilities (including, for avoidance of doubt, all taxes of Seller or Parent to the extent not included in the calculation of closing date net working capital);

      (e)    A deductible indemnification basket of $150,000.00 and an indemnification cap of 10% of the Enterprise Value (in each case, not applicable to representations regarding capitalization and organization of Seller, taxes, environmental, title to Purchased Assets, authority to execute and brokers' fees), and the indemnification provisions in the definitive purchase agreement would be the exclusive remedies of the parties with respect to the proposed transaction, except in the case of actual fraud by any party in connection with entering into the definitive purchase agreement;

      (f)    "<u>Adverse Consequence</u>" would mean any loss, cost, liability, tax or reasonable expense (including reasonable legal and other professional fees and costs), in each case net of any tax benefits and third party (including insurance) recoveries actually realized or received; <u>provided</u>, however, Adverse Consequence would not include: (i) diminution in value; (ii) consequential, special or punitive damages or incidental or indirect Adverse Consequences, including business interruption, loss of profits, loss of use of facilities and loss of goodwill, except to the extent any such Adverse Consequences are found by a court of competent jurisdiction to be owed to a third party; or (iii) Adverse Consequences based on a "multiple of profits" or other similar damage calculation methodology.

The Purchaser and the Real Property Seller will enter into a separate definitive purchase agreement with respect to the purchase of the Real Property, which definitive agreement shall contain terms and conditions mutually agreeable to the parties and which are consistent with the terms set forth above and with market terms for sales of similar real property.

Legacy Seeds, Inc.
June 29, 2018
Page 4

10. <u>Exclusive Negotiations</u>. From the date of your acceptance of this Letter until July 31, 2018, none of Seller or Owners will, directly or indirectly, through any shareholder, officer, director, employee, agent, representative or otherwise, (a) solicit or initiate, directly or indirectly, any inquiries, proposals or offers from any potential buyer (other than Purchaser) relating to the disposition of the Purchased Assets, the Real Property or Seller's business or assets, or any other transaction inconsistent with this Letter or (b) participate in any discussions or negotiations regarding, furnish to any person any information with respect to, or assist or participate in, any attempt or effort by any person to do or seek the foregoing. The restrictions set forth in this paragraph 10 do not extend to discussions between you and your advisors.

11. <u>Effect of this Letter of Intent</u>. The purpose of this Letter is to state our present intentions with respect to the proposed transaction. This Letter is submitted on a confidential basis and you agree not to disclose its existence or terms to any third parties, other than your financial and legal advisors on a need to know basis. Except for the provisions of paragraph 10 and this paragraph 11 (as to which paragraphs this Letter constitutes our binding agreement), this Letter does not constitute a legally binding agreement among us or obligation of any of us with respect to the proposed transaction, and no such agreement or obligation shall exist unless and until we execute a mutually acceptable definitive purchase agreement. We each reserve the right to terminate negotiations with the other at any time with or without reason and, if we notify you in writing that we have determined not to proceed with the proposed transaction for any reason, your prohibition on discussions with third parties in paragraph 10 will cease immediately. Each party will bear its own expenses incurred in connection with the proposed transaction.

12. <u>Next Step</u>. If the foregoing is acceptable to you, please so indicate by dating, signing and returning this Letter. Upon receipt of your acceptance of this Letter, we will promptly finalize our due diligence review of the Business and prepare a draft of the definitive purchase agreement. Please return the signed letter to me as soon as possible to allow us to provide it to our attorneys to finalize the Asset Purchase Agreement.

If you have any questions, please contact Jim Sheppard or Remos Lenio.

Sincerely,

Tillerman Seeds, LLC

By: James Sheppard
Its: President

Legacy Seeds, Inc.
June 29, 2018
Page 5

ACCEPTED AND AGREED: THE COMPANY:

LEGACY SEEDS, INC.

By:_____

Its: _____

Dated:_____, 2018

Legacy Property, LLC:

By:_____

Its: _____

Dated:_____, 2018

OWNERS:

_____
Bruce J. Ceranske

_____
Tyler E. Lee

_____
Steven D. Jensen

DMS 12688691v4

Legacy Seeds, Inc.
June 29, 2018
Page 4

10. <u>Exclusive Negotiations</u>. From the date of your acceptance of this Letter until July 31, 2018, none of Seller or Owners will, directly or indirectly, through any shareholder, officer, director, employee, agent, representative or otherwise, (a) solicit or initiate, directly or indirectly, any inquiries, proposals or offers from any potential buyer (other than Purchaser) relating to the disposition of the Purchased Assets, the Real Property or Seller's business or assets, or any other transaction inconsistent with this Letter or (b) participate in any discussions or negotiations regarding, furnish to any person any information with respect to, or assist or participate in, any attempt or effort by any person to do or seek the foregoing. The restrictions set forth in this paragraph 10 do not extend to discussions between you and your advisors.

11. <u>Effect of this Letter of Intent</u>. The purpose of this Letter is to state our present intentions with respect to the proposed transaction. This Letter is submitted on a confidential basis and you agree not to disclose its existence or terms to any third parties, other than your financial and legal advisors on a need to know basis. Except for the provisions of paragraph 10 and this paragraph 11 (as to which paragraphs this Letter constitutes our binding agreement), this Letter does not constitute a legally binding agreement among us or obligation of any of us with respect to the proposed transaction, and no such agreement or obligation shall exist unless and until we execute a mutually acceptable definitive purchase agreement. We each reserve the right to terminate negotiations with the other at any time with or without reason and, if we notify you in writing that we have determined not to proceed with the proposed transaction for any reason, your prohibition on discussions with third parties in paragraph 10 will cease immediately. Each party will bear its own expenses incurred in connection with the proposed transaction.

12. <u>Next Step</u>. If the foregoing is acceptable to you, please so indicate by dating, signing and returning this Letter. Upon receipt of your acceptance of this Letter, we will promptly finalize our due diligence review of the Business and prepare a draft of the definitive purchase agreement. Please return the signed letter to me as soon as possible to allow us to provide it to our attorneys to finalize the Asset Purchase Agreement.

If you have any questions, please contact Jim Sheppard or Remos Lenio.

Sincerely,

Tillerman Seeds, LLC

By: _____
Its: President

James Sheppard
President

Legacy Seeds, Inc.
June 29, 2018
Page 5

ACCEPTED AND AGREED: THE COMPANY:

LEGACY SEEDS, INC.

By: *Bruce Ceranske*

Its: PRESIDENT

Dated: 6-30, 2018

Legacy Property, LLC:

By: *Bruce Ceranske*

Its: Manager

Dated: 6-30, 2018


OWNERS:

*Bruce J. Ceranske*
Bruce J. Ceranske

_____
Tyler E. Lee

*Steven D. Jensen*
Steven D. Jensen

DMS 12668691v4

Legacy Seeds, Inc.
June 29, 2018
Page 5

ACCEPTED AND AGREED: THE COMPANY:

LEGACY SEEDS, INC.

By: *Bruce Ceranske*

Its: PRESIDENT

Dated: 6-30, 2018

Legacy Property, LLC:

By: *Bruce Ceranske*

Its: Manager

Dated: 6-30, 2018


OWNERS:

*Bruce J. Ceranske*
Bruce J. Ceranske

*signature*
Tyler E. Lee

_____
Steven D. Jensen

DMS 12688691v4

## Exhibit A - Legacy Net Working Capital

| Assets | 6/30/2018 |
|---|---|
| Cash if negative | |
| Accounts Receivable | |
| Other Receivables | |
| Prepaid Royalties - Monsanto | |
| Prepaid Royalties - Other | |
| Landscape Inventory | |
| Seed Inventory | |
| Supplies | |
| Bags | |
| Leafcutter Bee Inventory | |
| Pallets | |
| Inventory returned after 6/30 | |
| Grower Prepayments not on A/R | |
| Unused Prepay Credits Adjusted | |
| Accrued Rebates - Monsanto | |
| Accrued Rebates - other | |
| Accrued Prepay Credits - Monsanto | |
| Accrued Prepay Credits - Other | |
| Accrued Seed Treatment Rebates | |
| Accrued Other Rebates | |
| Misc. Accrual | |
| QSG sales prior to 6/30/18 no invoiced | |
| **Total Current Assets** | $           - |

| Liabilities | |
|---|---|
| Accounts Payable | |
| Discounts Payable | |
| Customer Deposits | |
| Reusable Box Credit | |
| Bad Debt not on BS | |
| Obsolete Inventory | |
| Inventory Value Write-Down | |
| Dump Cost of Unsold Seed | |
| Seed Costs not in A/P | |
| Reduction in A/R for Returns After 6/30 | |
| Accrued Trait Fees - Other | |
| Accrued Trait Fees - Monsanto | |
| Accrued Genetic Royalties - Other | |
| Accrued Genetic Royalties - Monsanto | |
| Accrued Commissions for Sales prior to 6/30/2018 | |
| Accrued QSG Royalty Refund | |
| Misc. Accrual | |
| **Total Current Liabilities** | $           - |
| | |
| **Net Working Capital** | $           - |